IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DeMARCUS CHRISTLE | § | |
| v. | § | CIVIL ACTION NO. 6:05cv334 |
| DARYL MAGLES, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff DeMarcus Christle, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in these proceedings pursuant to 28 U.S.C. 636(c). As Defendants. Christle names Officer Daryl Magles, Nurse Charlotte Bussey, Major Ronald Fox, Captain Kenneth Partin, and Lt. Michael Stephenson.

An evidentiary hearing was conducted on April 16, 2007. At this hearing and in his complaint, Christle says that on October 28, 2004, officers assembled for a "response team" attempted to carry him back to 11 Building solitary, 26 cell. Major Fox, Captain Partin, and Lt. Stephenson were present, observing the incident. He says that the officers attempted to carry up him a flight of stairs but that his "struggles" prevented them from doing so. Christle says that after freeing his face, which had been pinned to the stairs by the team members, he managed to turn toward the ceiling, seeing Officer Daryl Magles with his helmet off. Christle says that Magles punched him in the eye while the camera was on. Christle states that he was seen by Nurse Charlotte Bussey, who said that he was fine, disregarding the condition of his eye, and did not report the injury to the 10 Building medical personnel. He told the ranking officers that he had been assaulted, but they just walked away.

Christle says that the team members, along with Captain Partin, came back to the solitary cell and took him to 12 Building. According to Partin, Christle was being placed in administrative segregation over the incident. He says that they went to the 12 Building medical station and Nurse Bussey looked over his injury, wiped off the blood on his cheek, and tried to examine his eye, but the pain was such that he had to pull back; it was at this point that Bussey said that he was fine. He was then taken to a cell, and in order for him to see medical personnel, he had to cut his arm. Sgt. Holman came to the cell, along with an employee from the mental health department. Christle says that he was taken to the 10 Building medical department and given treatment for his arm, but no one was concerned about his eye. He was then sent to the Skyview psychiatric unit, where he was scheduled to see a doctor.

By the next day, Christle says, his condition had become worse, and he spoke to Dr. Crawford in Galveston by video teleconference. Dr. Crawford told medical personnel to send Christle to Galveston, where he learned that he had a small fracture to an area around his eye and a busted blood vessel. He was treated in the hospital and returned to Skyview on November 1, 2004.

<u>The Martinez Report</u>

The Court ordered prison officials to furnish records pertinent to a just and fair adjudication relevant to Christle's claim, as authorized in <u>Cay v. Estelle</u>, 789 F.2d 318 (5th Cir. 1986), and <u>Parker v. Carpenter</u>, 978 F.2d 190, 191-92 n.2 (5th Cir. 1992). Such materials are known as a <u>Martinez</u> Report, after the Tenth Circuit's decision in <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978) (*cited with approval in* <u>Cay</u> and <u>Parker</u>).

The Court notes that the officers claimed that Christle injured himself by intentionally banging his head on the stairs. However, at the hearing, Christle specifically denied doing this. He conceded that he was "twisting his body," but said that he never struck his head on the stairs. Instead, Christle reiterated that he turned over and was looking up when Magles punched him in the eye with a closed fist. For purposes of the present order, the Court will disregard the statements of the officers as to what happened to the extent that it disagrees with Christle's testimony.

The medical records attached to the report show that Christle was seen by a nurse identified Annette Bussey at 11:20 a.m., and said at that time that there was no injury. Nurse Bussey saw him again at 11:40 a.m., and this time said that there was a contusion to the eye, but that no treatment was required.[1]

The medical records at the Skyview Unit show that Christle was seen on October 29, 2004, at 7:48 a.m. At this time, Christle said that he was punched in the eye by a guard. Examination showed that his eye was very swollen and closed, and the sclera (i.e. the white part of the eye) was very red. He also had what was described as a self-inflicted wound on the left antecubital area (i.e. the lower part of the arm).

On October 29, 2004, Christle was seen in the hospital in Galveston and a CT scan was done. This scan showed a displaced fracture of the orbital bone (i.e. the bone around the eye). He was given Augmentin (an antibiotic) and Darvocet (a pain medication), and ice packs were ordered as needed.

On November 1, medical records from the Skyview Unit show that Christle returned from the hospital in Galveston, where his arm wound was re-sutured. No specific mention is made of his eye injury. On November 3, Christle was seen in therapeutic seclusion, and the record notes that he had met the criteria for release, in that he had not had thoughts of harming himself, nor was he hearing voices telling him to harm himself.

On November 7, 2004, Christle complained that he could not see out of his right eye, and his front tooth hurt. An examination showed that his right eye still appeared red in the sclera with some dissipation of blood noted, and no swelling of the gums. On November 12, Christle again complained of eye pain, and an examination showed that the sclera was red but there was no swelling. On November 24, his eye was seen to be less red than at the last exam, and he said that his blurred vision was also gone.

---

[1] The nurse's full name is Charlotte Annette Bussey.

The Court has also received and reviewed a copy of the video tape of the incident. The tape opens with Christle barricaded in a dayroom. He has a large object, the nature of which is unclear, but which resembles a log or bar. The officers order him to exit the dayroom but he refuses. Christle is pacing about, obviously in an agitated state. Chemical agents are administered into the dayroom. After a short period of time, the agents take effect. Christle takes his large object and puts it out of the slot in the door, surrendering it to the control of the officers. He then submits to a strip search, is placed in handcuffs through the door, and is removed from the dayroom.

Once removed, Christle and two officers stand and wait for a period of time. Eventually a cell move team arrives, suited up in body armor and helmets. Christle sits down on the floor and is placed in leg restraints. The team then picks him up and begins to carry him up the stairs. Christle is twisting his body about. At one point, while being carried up the stairs, he shouts "oh my head G** d*** it!" A few seconds later, one officer is visible without his helmet, and then the officer in front can be seen without his helmet. While being carried up the stairs, Christle says "my eye! Oh, my eye!"

However, Christle's head cannot be seen at any point during the escort up the stairs; the event in which he suffered the injury is not visible because the team members in the back obscure it. The tape is simply inconclusive as to whether Christle banged his head on the stairs, as the officers indicate, or if he was punched in the eye.

Legal Standards and Analysis

At the hearing, Christle testified that he looked up and saw Officer Daryl Magles, who then punched him in the eye with a closed fist. Medical records show that Christle suffered a fracture of the orbital bone. His claim against Magles, if proven, could show a possible constitutional violation.

Christle testified that he sued Nurse Bussey over the medical care which she provided. He says that she stated that nothing was wrong with him, but that when he went to Skyview, it was

determined that he needed further medical care, and he was sent to Galveston, where the fracture was discovered.

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Christle's claim against Nurse Bussey is essentially that she was wrong; she failed to diagnose his eye injury. The medical records show that she saw him twice, and that she determined that he had a contusion of the eye. As the Fifth Circuit explained, even negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d at 319-20. Christle has not shown that Nurse Bussey was deliberately indifferent to his serious medical needs as that term has been defined by the Fifth Circuit. His claim against her is without merit.

Next, Christle sued Major Fox, Captain Partin, and Lt. Stephenson, saying that these supervisors were present and witnessed the assault, but "went along" with the officers and issued a "falsified report." To the extent that Christle argues that Fox, Partin, or Stephenson could have prevented the assault, the claim is without merit. The videotape shows that the supervisors were standing on the ground floor while the move team was carrying Christle up the stairs. The camera, which was also on the ground floor at the time, did not see the alleged blow, and so it is not clear that the supervisors could have seen it either.

The Fifth Circuit, and other courts, have held that law enforcement officials have a duty to intervene when other officials are violating the constitutional rights of citizens in their presence. Harris v. Chanclor, 537 F.2d 203, 205 (1976); O'Neill v. Krzeminski, 839 F.2d 9, 11 (2nd Cir. 1988). In O'Neill, the inmate was assaulted by officers and then dragged across the floor by his

throat. The Second Circuit stated that where a use of force is so rapid that there is no realistic opportunity to intervene, there is no liability on the part of officers who fail to do so.

That situation exists in this case. According to Christle's testimony, he was twisting about when he looked up and saw Officer Magles standing above him. Magles then punched him in the face. The supervisory officers were standing on the ground floor and the punch, according to Christle, took place on the stairs. The supervisory officers, Major Fox and Captain Partin, had no reasonable opportunity to prevent the incident even had they been able to see it. This claim is without merit.

Christle also complains that Fox and Partin did not remove Magles from the scene. As noted above, it is by no means clear that the supervising officers could even have seen the alleged assault. In addition, the alleged assault, according to Christle, consisted of a single punch in the face; there was not a continuing assault or series of blows inflicted upon him as he was being carried up the stairs. The videotape shows that after the move team carried Christle upstairs, he was placed in a cell and his restraints removed. The officers then left the cell. He was separated from Magles within about two minutes. Christle has not shown that the supervisors violated the Constitution by failing to remove Magles from the scene immediately, instead of some two minutes later. This claim is without merit.

Finally, Christle contends that the supervisory officers falsified the report by going along with the officers' statements that Christle had hit his head on the stairs. As noted above, it is not clear that the supervisors could have observed what was happening because five move team officers were carrying Christle up a narrow flight of stairs; effectively obscuring the vision of anyone standing on the ground floor. There is no constitutional violation in the supervisors' accepting the word of the officers as to what had happened.

Even if the supervisors did see the alleged punch, however, Christle has still failed to show a constitutional violation with regard to the claimed falsification of the records. The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must

show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994).

In this case, even if the records were falsified, Christle has not shown that this is a violation of a right secured by the Constitution or laws of the United States. *See, e.g.*, Knox v. Wainscott, 2003 WL 21148973 (N.D.Ill. 2003) (no Section 1983 claim against nurse who allegedly falsified injury report; even if the nurse engaged in professional misconduct, no constitutional violation was shown). Similarly, if the use of force report was falsified, and untrue statements given by the officers involved, this could be a violation of prison regulations or even state law, but there is no showing that it is a violation of any rights protected by the Constitution or laws of the United States. *Cf.* Baker v. McCollan, 443 U.S. 137, 146 (1979) (noting that many claims which may be actionable as violations of state tort law do not amount to constitutional violations).

At one time, the Fourth Circuit held that a claim of constitutional magnitude may be stated if an inmate shows that false information is in his file which is relied upon to a constitutionally significant degree. Paine v. Baker, 595 F.2d 197, 201 (4th Cir.), *cert. denied* 444 U.S. 925 (1979); *see also* Guthrie v. Evans, 93 F.R.D. 390, 395 (S.D. Ga. 1981) *and* McCrery v. Mark, 823 F.Supp. 288, 291 (E.D.Pa. 1993). The Fourth Circuit made clear that the fact that merely because an inmate disputes evaluations and opinions concerning him does not show that the information is false. Paine, 595 F.2d at 201.

However, Paine has been questioned by the Fifth Circuit and other courts, including the Fourth Circuit itself. Paine arose in the context of information in a parole file, and because inmates have no constitutional right to release on parole, the courts, including the Fifth Circuit, have concluded that there are no procedural due process protections for procedures unrelated to protected liberty interests. Johnson v. Rodriguez, 110 F.3d at 308-09 and n. 13. In Johnson, as noted above, the Fifth Circuit expressly stated that because Texas prisoners have no protected liberty interest in parole, they cannot mount a challenge against any state parole review procedure on procedural or

8

substantive grounds. Johnson, 110 F.3d at 308. This includes the contentions concerning allegedly false information; the Fifth Circuit concluded that Johnson's allegation that the Board considers unreliable or even false information in making parole determinations, without more, did not assert a federal constitutional violation.

In this case, were the Paine test applied, Christle's claim regarding the records would fail because he has not shown that the allegedly false information placed in his file has been relied upon to a constitutionally significant degree. Under Rodriguez, Christle's claim regarding the records would likewise fail because the claim does not assert a federal constitutional violation. Whether or not Christle's claims in this regard set out a violation of prison regulations or state law, he has shown no constitutional violation, and so his claims against Major Fox, Captain Partin, and Lt. Stephenson are without merit. *See* Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (violations of prison rules alone is not sufficient to rise to the standards of a constitutional claim); *accord*, Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. The Fifth Circuit has held that Section 1915A applies to all lawsuits filed by persons in confinement, even those where, as here, the plaintiff is not proceeding *in forma pauperis*. Ruiz v. United States, 160 F.3d 273, 274-75 (5th Cir. 1998).

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations.  Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Christle's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted against the Defendants Nurse Bussey, Major Fox, Captain Partin, and Lt.  Stephenson.  It is accordingly

ORDERED that the Plaintiff's claims against the Defendants Nurse Bussey, Major Fox, Captain Partin, and Lt.  Stephenson are hereby DISMISSED with prejudice as frivolous.  It is further

ORDERED that the Defendants Nurse Bussey, Major Fox, Captain Partin, and Lt. Stephenson are hereby DISMISSED as parties to this lawsuit.  The dismissal of these claims and parties shall have no effect upon the Plaintiff's claims against the Defendant Daryl Magles.  Finally, it is

ORDERED that the dismissal of these claims and parties shall not count as a strike for purposes of 28 U.S.C. §1915(g).

**So ORDERED and SIGNED this 15th day of May, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE